IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANTONE LEON TAYLOR                                                                PLAINTIFF

v.                             Civil No. 1:13-cv-01004

DOUG WOOD; DAVID NORWOOD;
DETECTIVE MOORE; DEANNA
FRIENDS; LT. JAMES BOLTON;
JAILER ANDREW TOLLEFSON;
JAILER DENNIS ROBINSON; and
DETECTIVE VOSS                                                                    DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed *pro se* by the Plaintiff, Antone Taylor, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the Arkansas Department of Correction Wrightsville Unit ("ADC").

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Separate Defendants' Motions for Summary Judgment. ECF Nos. 45, 47. I held a hearing on September 8, 2015 at which time I heard Plaintiff's sworn testimony in response to these Motions for Summary Judgment. After careful consideration, the undersigned makes the following Report and Recommendation.

1.      **BACKGROUND**

Plaintiff filed his Amended Complaint on January 16, 2013. ECF No. 4. Plaintiff also

1

filed a Supplement to his Amended Complaint on April 23, 2013.  ECF No. 16.  At the time he filed his Amended Complaint, Plaintiff was incarcerated in the Union County Detention Center ("UCDC"), however, his claims deal with an incarceration in the Ouachita County Detention Center ("OCDC").

In his Amended Complaint, Plaintiff names Doug Wood, Sheriff David Norwood, and Detective Moore as Defendants.  ECF No. 4, p. 3.  In his Supplement, Plaintiff named Deanna Friends, Lt. James Bolton, Jailer Andrew Tollefson, Jailer Dennis Robinson, and Detective Voss as Defendants.  ECF No. 16.  Plaintiff alleges both official and individual capacity claims against these Defendants.

In his Amended Complaint and Supplement, Plaintiff claims his constitutional rights were violated (1) when he was denied prescription medications and medical treatment; (2) by his conditions of confinement—bugs in his food, sleeping conditions, unavailability of cleaning supplies; (3) the unavailability of a grievance process; (4) when a fellow inmate conducted Plaintiff's book-in process; (5) property not listed on a search warrant being seized and not returned; and (6) he was denied counsel at his initial appearance.  In his Amended Complaint, Plaintiff requests, as relief,  punitive damages and injunctive relief against OCDC.  ECF No. 4, p. 5.

Defendants Doug Wood, Sheriff David Norwood, Deanna Friends, Dennis Robinson, James Bolton, and Andrew Tollefson ("Ouachita Defendants") filed a Corrected Motion for Summary Judgment on May 29, 2015.  ECF No. 45.  Defendants Moore and Voss filed a Motion for Summary Judgment on June 6, 2015.  ECF No. 47.  The Court held a hearing on these Motions on September 8, 2015.  At this hearing, Plaintiff provided sworn testimony as his response to

2

Defendants' Motions and submitted to the Court six exhibits in support of this testimony.  ECF No. 56.

## 2.      SUMMARY JUDGMENT RECORD

Ouachita Defendants argue in their Motion for Summary Judgment: (1) Plaintiff failed to allege any personal involvement of Sheriff Norwood and James Bolton in any of his complained of actions; (2) Plaintiff failed to show that he suffered from an objectively serious medical need and failed to show Doug Wood, Deanna Friends, Dennis Robinson, and Andrew Tollefson deliberately disregarded such need; (3) Plaintiff has not alleged any physical injury; (4) Plaintiff failed to allege conditions of his confinement that rise to the level of a constitutional violation nor did he indicate how any of the Ouachita Defendants caused such conditions; (5) Plaintiff cannot show that a 309 inmate[1] conducting his booking process violated his constitutional right to privacy; (6) Plaintiff does not have a constitutional right to a grievance procedure; and (7) Plaintiff failed to state any official capacity claims.  The Ouachita Defendants presented Plaintiff's deposition, OCDC records, OCDC policies, and the affidavit of James Bolton in support of their Motion for Summary Judgment.

Camden Defendants argue in their Motion for Summary Judgment: (1) Plaintiff failed to allege any claim against Detectives Moore and Voss; (2) Plaintiff's search warrant claim is without merit; and (3) Plaintiff was not denied his right to counsel.  The Camden Defendants presented affidavits from Detectives Moore and Voss, the records related to Plaintiff's arrest, records related to the warrant at issue, the records of Plaintiff's first appearance, his criminal docket, and

_____

[1] A 309 inmate is an inmate from the Arkansas Department of Corrections being housed at a county jail under the 309 Work Program.  These inmates serve in trustee type positions at the county jails.

sentencing order in support of their Motion for Summary Judgment.

At the summary judgment hearing I asked Plaintiff to provide a sworn statement detailing how he believes his constitutional rights were violated.  Below is a summary of his sworn testimony:

Plaintiff testified that his constitutional rights were violated while he was incarcerated in the OCDC because there was no nurse or doctor on site at the jail.  Plaintiff testified that he requested to see the nurse or doctor "several times" but was denied treatment for his Asthma, heart condition, blood pressure, and mental disorder.  Plaintiff also missed "several days" of medication. Plaintiff testified that missing his medication causes serious medical problems for him.

Specifically, Plaintiff testified that on December 9, 2013 he missed fifteen (15) days of blood pressure medication.  Further, Plaintiff testified he missed one day of medication on October 1, 2013.  Additionally, Plaintiff testified he missed twenty-four (24) days of heart medication in April 2014 and an additional eight days also in April 2014 of all of his medication.  Plaintiff also testified he suffered chest pains and shortness of breath during this time but did not complain because he did not want to be put in isolation.

Plaintiff also testified the conditions of his confinement violated his constitutional rights. Specifically, Plaintiff testified that there were bugs in his food on "several" occasions and he was unable to get a new tray of food.  This led to Plaintiff not eating on these "several" occasions. Further, Plaintiff testified that his mattress was damaged with the stuffing falling out.  Finally, Plaintiff testified that the bunk above him was falling down on him.

Plaintiff also claims that 309 inmates handed out his medication and this violated his constitutional right to have his medication delivered by a trained professional.  Plaintiff testified

4

that this practice could have injured him.  Plaintiff did not testify that this practice actually injured him.

Lastly, Plaintiff stated that he had medical logs from the OCDC that supported his testimony.  I directed Plaintiff to mail these logs to the Clerk of the Court.  Plaintiff did and these logs are filed on the docket in this matter at ECF No. 56.  These logs, however, do not support Plaintiff's testimony as to the number of days he missed medication.  The discrepancies between Plaintiff's testimony and the medical logs he offered is discussed in more detail in the section regarding Plaintiff's denial of medication claim.

I also asked Plaintiff to explain specifically how each Defendant violated his constitutional rights.  Below is a summary of Plaintiff's sworn testimony:

**Sheriff Norwood**

Sheriff Norwood violated Plaintiff's rights by not having a grievance procedure.  Also, Plaintiff sent Sheriff Norwood several medical requests and never received a response.  Plaintiff testified he never saw or spoke with Sheriff Norwood.  Instead, Plaintiff gave his medical requests to the jailers to send to Sheriff Norwood.

**James Bolton**

Plaintiff spoke with James Bolton several times regarding Plaintiff's medication and Bolton told Plaintiff he would contact Union County to get the medications.  Plaintiff wrote medical request forms directed to Bolton.  Bolton told Plaintiff he spoke with the doctor and nurse. Plaintiff also testified Defendant Bolton set Plaintiff an appointment to visit an outside doctor.

**Detectives Moore and Voss**

Plaintiff also testified the Camden Defendants, Detectives Moore and Voss violated his

5

constitutional rights by not providing him a copy of the search warrant executed on his home. Also, Moore and Voss refused to return Plaintiff's personal property that was seized at his home. Plaintiff testified he has no knowledge whether the State of Arkansas invalidated his conviction.[2]

Plaintiff also testified he believes Detectives Moore and Voss prevented the state court from providing Plaintiff with an attorney for his criminal charges at his initial appearance in state court. Plaintiff testified that the judge asked Detective Moore if she was comfortable with Plaintiff having an attorney.  According to Plaintiff, Detective Moore indicated she was not.

**Doug Wood, Deanna Friends, Dennis Robinson, Andrew Tollefson:**

Plaintiff did not offer any testimony regarding how Defendants Wood, Friends, Robinson, or Tollefson violated his constitutional rights.

Plaintiff requests injunctive relief and monetary damages from all Defendants.

## 3.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set

---

[2] It should be noted Plaintiff testified from the Arkansas Department Corrections where he is currently incarcerated.  It is, therefore, unlikely the State of Arkansas invalidated Plaintiff's conviction.

forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## 4.    DISCUSSION

I must address two initial matters.  First, Plaintiff can no longer seek injunctive relief from the OCDC as he is no longer incarcerated at that facility.  *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief).  *See also Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (holding an inmate's First Amendment claims regarding denial of items to perform religious practices moot once he was transferred from one state penitentiary facility to another state penitentiary facility); *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) (holding an inmate's claims regarding prison conditions moot once the inmate was transferred and no longer subject to those conditions).  Therefore, Plaintiff's requests for injunctive relief should be dismissed as moot. *See Church of Scientology,* 506 U.S. at 12.

Second, while Plaintiff initially made claims against Defendants Wood, Friends, Robinson, and Tollefson in his Supplement to his Amended Complaint, he did not provide any response or objections regarding the dismissal of these Defendants on summary judgment.

Defendants Wood, Friends, Robinson, and Tollefson argued in their Motion for Summary

7

Judgment they were not deliberately indifferent to Plaintiff's medical needs and they played no part whatsoever in the conditions of Plaintiff's confinement.  Plaintiff may not rest upon his pleadings in the face of this Motion.  He must set forth specific facts to raise a genuine issue for trial.  *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477 U.S. at 324.  While Plaintiff did provide sworn testimony and offer medical logs regarding his denial of medication claim in general and relating to Sheriff Norwood and Lt. Bolton, he did not offer any response as to Defendants Wood, Friends, Robinson, and Tollefson.  Therefore, Plaintiff has not met proof with proof and shown any genuine issue of material fact exist regarding his claims against Defendants Wood, Friends, Robinson, and Tollefson.

Moreover, Plaintiff did not offer any facts showing how Defendants Wood, Friends, Robinson, and Tollefson were personally involved in any of the complained of conduct.  Liability under section 1983 requires some personal or direct involvement in the alleged unconstitutional action.  *See e.g., Ripon v. Ales*, 21 F.3d 805, 808-09 (8th Cir. 1994).  Plaintiff failed to present any evidence that these Ouachita Defendants were  involved in the denial of Plaintiff's medication or the conditions of his confinement.  *See Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

Accordingly, Plaintiff's claims against Defendants Wood, Friends, Robinson, and Tollefson should be dismissed.  All that remains are Plaintiff's claims against Ouachita Defendants Norwood and Bolton and Camden Defendants Moore and Voss and his official capacity claims.  I will address each in turn below.

A.    Official Capacity Claims

Plaintiff has failed to state an official capacity claim against any Defendant.  Section 1983

provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the Defendants acted under color of state law and that they violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998).  With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010).   In other words, Plaintiff's official capacity claims against Defendants here are treated as claims against Ouachita County and the City of Camden.  *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish Ouachita County and the City of Camden's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).  The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not

9

> be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to do so here.

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted). Plaintiff has also failed to allege any custom of either Ouachita County or the City of Camden that violated his constitutional rights.

Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of

law.

B.    Supervisory Liability

Next, Plaintiff's claims against Sheriff Norwood fail as a matter of law.  A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs*, 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity.*" White v. Holmes*,  21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

Here, Plaintiff testified at the hearing that he never interacted with Sheriff Norwood.  There is nothing on the record to indicate Sheriff Norwood was even aware of the situations of which Plaintiff complains.  Accordingly, Plaintiff's claims against Sheriff Norwood in his individual capacity fail as a matter of law.

C.    Denial of medical care

Plaintiff claims in his Amended Complaint and Supplement that he was denied medical

11

care.  Specifically, Plaintiff claims: (1) he was denied medical attention for thirty (30) days; (2) he suffered "many health problems;" (3) he was denied medication for thirty-five (35) days; (4) he suffered chest pains but was not taken to the hospital; (5) his vitals were not checked; (6) Defendants Wood and Friends did not reorder his medication; (7) Defendant Bolton refused to respond to his grievance or speak with him regarding his medical grievances; and (8) Defendant Bolton refused to approve a hospital visit for Plaintiff to get his blood levels checked.  ECF Nos. 4, 16.  Defendants argue Plaintiff has failed to show any Defendants knew of a serious medical condition and deliberately disregarded that condition.

First, I must reiterate, the only Defendants Plaintiff mentioned at the summary judgment hearing as violating his rights regarding adequate medical care were Defendants Norwood and Bolton.  As I have explained above, Sheriff Norwood cannot be held liable simply for being the Sheriff of Ouachita County.  Therefore, the only potential claims Plaintiff has remaining are his denial of medical care claims against Defendant Bolton.  Further, Plaintiff only testified regarding his denial of medication claims with regards to Defendant Bolton.  Plaintiff may not rest upon his pleadings in the face of Defendants' Motions.  He must set forth specific facts to raise a genuine issue for trial.  *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477 U.S. at 324.  Therefore, Plaintiff has not met proof with proof and shown any genuine issue of material fact exist regarding all of his other denial of medical care claims.[3]

At the hearing, Plaintiff testified that he missed fifteen days of blood pressure medication, his inhaler, his mental health medications and his heart medications in December 2013.  Plaintiff

---

[3] Additionally, it appears all of Plaintiff's other medical care claims related to the other Defendants that I previously explained should be dismissed because Plaintiff failed to provide any testimony regarding his claims against such Defendants.

also testified that in October 2013 he missed one day of medication.  Additionally, in April 2014,
Plaintiff missed eight (8) days of all of his medication and his heart medications on April 7, 2014.
Finally, Plaintiff testified he missed thirty (30) days of his heart medication.[4]  Plaintiff submitted
medical logs from the Ouachita County Sheriff's Office he claims support this testimony.

Plaintiff also testified that he spoke with Defendant Bolton several times regarding the
issues with his medication and that Defendant Bolton told Plaintiff he would contact Union County
to get Plaintiff's medication.[5]  Additionally, Plaintiff testified that Defendant Bolton told Plaintiff
he spoke with the nurse and the doctor and Defendant Bolton set Plaintiff up to see a doctor
outside of the OCDC.

The medical logs Plaintiff submitted are the same medical logs submitted by Defendants
in connection with their motions with the addition of Plaintiff's handwritten notes.  These logs
cover February, March, and April of  2013.  Plaintiff claims he missed fifteen (15) days of all of
his medication in February.  The February medication log starts on February 9, 2013 and ends on
February 29, 2013.  It appears Plaintiff initialed the days on which he received his medication.
From Plaintiff's initials on these logs, it appears Plaintiff missed five (5) days of the Atenolol, and
seven (7) days of the other three medications—Quetiapine, Venlafaxine, and Warfarin Sodium.

On the March 2013 medication log it appears Plaintiff was still taking all of the same
medications.  From Plaintiff's initials on the log it appears Plaintiff did not receive his Quetiapine
on March 3.  All of the other days of the month are initialed by Plaintiff for each medication.

[4] Plaintiff did not provide the dates for the alleged thirty days of missed medication.

[5] This is because Plaintiff was incarcerated in Union County when he received the initial
prescriptions and even though he was housed in Ouachita County at the time in issue here he was
still technically a Union County inmate.

13

There are three separate medical logs for April 2013.  From Plaintiff's initials on the April logs, it appears Plaintiff missed six (6) days of Warfarin, three (3) days of Atenolol, six (6) days of Quetiapine, and six (6) days of Venlafazine.[6]

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

In order to show  he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

---

[6] Plaintiff and Defendants both also submitted a printout from the pharmacy, however, no explanation of what this printout indicates (other than what medications Plaintiff was prescribed which is not in dispute) was offered by Defendants or Plaintiff.  I find the printout of little help without any explanation.

14

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

While Plaintiff claims he was "denied" medication the record indicates Plaintiff's prescription medication was delayed at various times but not denied. The medication logs provided by Plaintiff indicate he received his medications, albeit somewhat inconsistently, from February 2013 through April 2013. It appears the longest delay in receiving medications occurred

15

in February 2013 when Plaintiff went from February 22 to February 26, 2013 with no medication.

"[A]n inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995). *See also Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Plaintiff has not presented any verifying medical evidence showing the objective seriousness of the delay in receiving his prescriptions. While, Plaintiff claims he suffered chest pains and shortness of breath due to delay in receiving his prescriptions, he did not provide any verifying medical evidence to show these symptoms were a result of the delayed medications. Therefore, Plaintiff's claim regarding the delay of his medication against Defendant Bolton fails as a matter of law. *Id.*

Additionally, any claims against Defendant Bolton for denial of medical care against fail as Plaintiff testified at the hearing that Defendant Bolton set Plaintiff up with a doctors appointment.

      D.    <u>Conditions of confinement</u>

Plaintiff claims his constitutional rights were violated by the conditions of his confinement at the OCDC. Specifically, Plaintiff testified the food at the OCDC had bugs in it on two separate occasions, his mattress was damaged with the stuffing falling out, and the bunk above him was falling in on him.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.

*See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Here, Plaintiff was a pre-trial detainee at the time of the alleged incidents, however, the Eighth Circuit applies the same deliberate indifference standard to pretrial detainees as applied to convicted inmates.  *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.).  The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.   The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions involving "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.   The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner"  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Initially, while Plaintiff complained of a lack of cleaning supplies and lack of bed rails in

his Amended Complaint and Supplement he did not offer any testimony on this claim at the hearing. Ouachita Defendants moved to dismiss this claim in their Motion for Summary Judgment. As explained above, Plaintiff may not rest on his pleadings in response to Ouachita Defendants' Motion and the claim should be dismissed. *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477 U.S. at 324. Therefore, I recommend Plaintiff's cleaning supply and bed rail claims be dismissed.

       i.    <u>Insects in food</u>

    Plaintiff has failed to show the "several" occasions he found bugs in his meal tray objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. This objective component requires a showing that Plaintiff faced a substantial risk of serious harm. *See e.g., Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). In a case involving the preparation of food, the objective component may be met by evidence tending to show that the food was prepared in a manner presenting an immediate danger to the Plaintiff's health. Plaintiff has not shown or even alleged he was in any danger from the "several" instances of insects in his meal tray. The two isolated incidents he points too do not state a claim of constitutional dimension. *See e.g., Wishon v. Gammon*, 978 F.3d 446, 449 (8th Cir. 1992)("[P]risoners have a right to nutritionally adequate food; however, Wishon has presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985)("The fact that the food occasionally contains foreign objects . . . does not amount to a constitutional deprivation"). *See also Lunsford v. Reynolds*, 376 F. Supp. 526, 527 (W.D. Va. 1974)("The only contention concerning food which is detailed at all, is the inmates' complaint that their food frequently

18

contains insects.  Nevertheless, occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion").

Furthermore, Plaintiff did not allege any facts regarding how any of the Defendants caused the instances of insects in his meal tray.  As mentioned above, liability under section 1983 requires some personal or direct involvement in the alleged unconstitutional action.  *See e.g., Ripon*, 21 F.3d at 808-09.

Moreover, even if Plaintiff established a constitutional violation regarding the insect claim, compensatory damages cannot be awarded for the violation of a constitutional right alone.  There must be an actual injury resulting from the violation to warrant compensatory damages.  *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted).  Plaintiff did not offer any testimony showing how he was injured by the insects in his food.

Accordingly, Plaintiff's conditions of confinement claim related to the insects in his meal tray fails as a matter of law.

        ii.    <u>Mattress and bed</u>

Likewise, Plaintiff's complaints regarding the stuffing falling out of his mattress and the top bunk sinking in on him do not objectively rise to the level of a constitutional violation.  Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.  *Irving v. Dormire,* 519 F.3d 441 (8th Cir. 2008).  However, Plaintiff must show that his living conditions denied him of minimal measure of life's necessities.  *Williams v. Delo,* 49 F.3d 442, 445 (8th Cir. 1995).  As stated above, Plaintiff must show that the condition of his mattress and bunk posed a substantial risk of serious harm to his health.  *See Farmer v.*

*Brennan,* 511 U.S. 825, 834 (1994).

Here, Plaintiff was not denied bedding.  He was simply unhappy with the conditions of the bunk and mattress he was provided.  Plaintiff did not, however, offer any facts indicating how the condition of his mattress or bunk posed a substantial risk to his health or any facts indicating Plaintiff was injured in anyway by the condition of his bunk or mattress.  There is no evidence to indicate that the condition of Plaintiff's mattress and bunk deprived him of the minimal measure of life's necessities.

Furthermore, Plaintiff did not allege any facts regarding how any of the Defendants were involved or responsible for the conditions of his mattress and bunk.  As mentioned above, liability under section 1983 requires some personal or direct involvement in the alleged unconstitutional action.  *See e.g., Ripon*, 21 F.3d at 808-09.

Moreover, even if Plaintiff established a constitutional violation regarding the bedding claim, compensatory damages cannot be awarded for the violation of a constitutional right alone. There must be an actual injury resulting from the violation to warrant compensatory damages.  *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted).  Plaintiff did not offer any testimony showing how he was injured by the condition of his bedding.

Accordingly, Plaintiff's conditions of confinement claim regarding his bunk and mattress fail as a matter of law.

E.      309 inmate

I initially interpreted Plaintiff's claim in his Amended Complaint and Supplement regarding the 309 inmate conducting his booking as a right to privacy claim.  However, in his sworn

testimony at the summary judgment hearing the facts Plaintiff presented related to a 309 inmate passing out Plaintiff's medication.  Plaintiff argued he has a right to a trained professional passing out his medication.  Therefore, I interpret Plaintiff's 309 inmate claim to be one for deliberate indifference to his medical care.

The only testimony Plaintiff offered was that the 309 inmate handed out Plaintiff's medication, and Plaintiff could have been hurt by this action.  Plaintiff was not actually injured in any way by the 309 inmate dispensing his medication.

This testimony does not offer any indication that any Defendant was deliberately indifferent to Plaintiff's medical needs by allowing a 309 inmate to dispense Plaintiff's medication.  A non-medical person passing out medication does not implicate the constitution.  *See e.g., Griggs v. Livermore,* No. 13-5133, 2014 WL 979197 (W.D. Ark. March 13, 2014) ("There is no constitutional requirement, or even state law to require that only medical staff can deliver medication . . .").

Further, even if Plaintiff established a constitutional claim regarding the 309 inmate, compensatory damages cannot be awarded for the violation of a constitutional right alone.  There must be an actual injury resulting from the violation to warrant compensatory damages.  *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted).

Accordingly Plaintiff's claim related to the 309 inmate fails as a matter of law.

F.    Warrant

Plaintiff claims in his Amended Complaint and Supplement that Detectives Moore and Voss seized items that were not listed on a search warrant executed at Plaintiff's home during his

criminal investigation.  At the hearing, in relation to these claims, Plaintiff testified Detectives Voss and Moore did not provide him with a copy of the search warrant of his home or return the property seized at his home when he asked them to do so.  I interpreted this claim as one for a Fourteenth Amendment due process violation.

The Fourteenth Amendment protects against deprivations without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  "A deprivation by state action of a constitutionally protected interest in life, liberty, or property is not actionable under section 1983 'unless and until the State fails to provide due process.'"  *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 465 (8th Cir. 1992) (*quoting Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).  Post-deprivation remedies are "sufficient when the deprivation was unpredictable, when a pre-deprivation process was impossible, and where the conduct of the state actors was unauthorized." *Id*. (citations omitted).  Here, Plaintiff testified that personal property was taken from his home during the execution of a criminal warrant.  Plaintiff does not challenge the legality of the criminal warrant or seizure of the property.  Plaintiff only challenges the refusal to return the property seized.

Plaintiff's due process rights were not violated here because he had adequate state post-deprivation remedies.  *See Walden v. Carmack,* 156 F.3d 861 (8th Cir. 1998); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas Rule of Criminal Procedure 15.2 provides Plaintiff with adequate post-deprivation remedies that satisfy due process.  *See Crawford v. Van Buren County*, 678 F.3d 666 (8th Cir. 2012) (Section 1983 claim dismissed because the plaintiff failed to exhaust state remedies by petitioning for return of her property pursuant to

22

Arkansas Rule of Criminal Procedure 15.2 prior to bringing section 1983 action).  Plaintiff made

no representations that he had exhausted his state remedies prior to bringing this action.  Therefore,

Plaintiff's claims regarding his seized property fail as a matter of law.[7]

>    G.    Denial of counsel

Plaintiff claims Defendant Moore denied him counsel at his initial appearance.  This claim

is blatantly contradicted by the record.  In the record of Plaintiff's initial appearance, it is noted

that Plaintiff was advised of his right to counsel and that if he was indigent, counsel would be

appointed to represent him.  Plaintiff was determined to be indigent and a public defender was

appointed to represent Plaintiff.  Finally, Plaintiff acknowledged that he understood the charges

against him, and waived the right to communicate with counsel or family, and requested the Court

to proceed with the probable cause determination and pretrial release inquiry.  Plaintiff signed this

statement.  ECF No. 48-11.  Further, on the criminal docket for Plaintiff's criminal matter Mr.

Jeffrey is listed as his attorney.  ECF No. 48-12.  Plaintiff did not offer any testimony to challenge

these records.

Accordingly, Plaintiff's denial of counsel claim fails as a matter of law.  *See Scott v.

Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

>    H.    Grievance procedure

---

[7] While Plaintiff did complain at the hearing of not receiving a copy of the warrant, he did not make this claim in his Amended Complaint or Supplement.  To the contrary, Plaintiff states in his Supplement that he will send the Court a copy of the warrant when he receives it from his sister-in-law.  Therefore, I will not address a claim raised for the first time in response to the Motions for Summary Judgment.

Plaintiff claimed in his Amended Complaint and Supplement his constitutional rights were violated by the lack of grievance procedures at the OCDC. Plaintiff does not have an independent constitutional right to a grievance procedure. *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)). A jail's failure to process an inmate's grievances, without more, is not actionable under section 1983. *Buckley,* 997 F.2d at 495. Accordingly, Plaintiff's claims relating to OCDC's failure to have a grievance procedure fails as a matter of law.

5.      **CONCLUSION**

Accordingly, I recommend Defendants Motions for Summary Judgment (ECF Nos. 45, 47) be **GRANTED** and Plaintiff's Amended Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **23rd day of December 2015**.

                                        /s/ Barry A. Bryant_____
                                        HON. BARRY A. BRYANT
                                        UNITED STATES MAGISTRATE JUDGE